[No. 635.  Decided January 4, 1893.]

SEATTLE AND MONTANA RAILWAY COMPANY, *Appellant*, v.
CLAUSSEN–SWEENEY BREWING COMPANY, *Respondent*.

SALE — DELIVERY BY SUB-CONTRACTOR — WHEN TITLE PASSES.

A contractor agreed to furnish a railway company a large num-
ber of ties, which were to be delivered on the company's right-of-
way and inspected by it, those furnished during one month to be
paid for on the 25th of the succeeding month.  The contractor let
a contract to a third party to furnish a portion of the ties, who in
turn sub-contracted with another for the delivery of such ties, the
contract providing that the inspection and acceptance of the ties
should be by the regular tie inspector of the railway company.  In
addition, the usual course of dealing between the company and its
contractors and sub-contractors in such transactions contemplated
but one delivery.  *Held*, That on a delivery of the ties by the second
sub-contractor upon the company's right-of-way, and the inspection
and acceptance by the company as a delivery by the principal con-
tractor under the contract, the title passed to the railway company,
although the second sub-contractor may have had no knowledge of
such inspection and acceptance, and may never have received any
pay for the ties.

*Appeal from Superior Court, King County.*

*Burke, Shepard & Woods*, for appellant.
*Stratton, Lewis & Gilman*, for respondent.

The opinion of the court was delivered by

HOYT, J.—This action was brought to recover the value
of certain ties alleged to have been the property of the
plaintiff, and to have been converted to its own use by the
defendant.  The ties alleged to have been so converted, for
the purposes of the trial and consideration here, were di-
vided into two lots, as to one of which, numbering about
eleven hundred, the defendant admitted the taking, but de-
nied the title of the plaintiff, and as to the other, number-
ing about seven hundred, no question was raised as to the

title of the plaintiff, but the taking was denied by the defendant.

As to the second parcel, and the questions raised in connection therewith, we shall say nothing, as our conclusions in regard to the questions presented in reference to the other lot will require a re-trial of the case. And upon such re-trial it is not likely that the same questions will present themselves as to said lot as upon the trial already had. And anything that might be now said in regard thereto for that reason would be of no avail.

Quite a number of errors have been alleged with reference to the questions presented to the court relating to said first mentioned lot; some of which we think, as a matter of purely technical law, were clearly well taken, but as it seems to us that the case was submitted to the jury under instructions, the whole scope of which was such as to mislead to the substantial prejudice of the plaintiff, we shall content ourselves with a general consideration of this substantial error, as the technical errors occurring during the progress of the trial will be substantially covered by such consideration, and the lower court, upon a re-trial in accordance with this opinion, will not be likely to fall into the technical errors which appear in this record.

It appears from the record that the plaintiff had made a contract with Woolley & Co., under which they were to furnish to such plaintiff a large number of ties, which were to be delivered on the right-of-way of the plaintiff, and inspected by it, and those furnished during one month to be paid for on or about the 25th of the succeeding month. Under such contract the intention of the parties seems clear that, immediately upon the inspection of the ties, and the acceptance thereof by the plaintiff, the title passed to it, and was not in any sense retained by said Woolley & Co. until payment had been made. In other words, it was clearly a sale of the ties upon credit, by which the title

passed, perhaps immediately upon the delivery upon the right-of-way of the plaintiff, and before inspection and acceptance by it, and certainly immediately upon such inspection and acceptance.

Woolley & Co. let a contract to one Fostrom for the furnishing of a portion of the ties under said contract, and said Fostrom sub-contracted for the delivery of such ties with one Osier. The contract between said Woolley & Co. and said Fostrom, and said Fostrom and said Osier, provided for the delivery of the ties, and for the payment therefor, in substantially the same form as did the one between Woolley & Co. and the plaintiff, and from the uncontradicted testimony as to the course of dealing as between the railroad company and its contractors, and those having contracts under said principal contractors, it clearly appears that the parties to the several contracts contemplated only one delivery; that it was the intention of all that when Osier delivered the ties upon the right-of-way of the plaintiff, they were there for the purpose of being inspected, and, if found in accordance with the contract, accepted by it; and that such inspection and acceptance were to be operative not only as between the plaintiff and its principal contractor, but also as between the sub-contractors and their respective principals. This sufficiently appears from an examination of the terms of the contract of the plaintiff with Woolley & Co., and those of the contract between Osier and Fostrom.

The last named contract did not provide that the inspection and acceptance should be personal by Fostrom, but, instead thereof, that such inspection and acceptance should be by the regular tie inspector of the plaintiff. And the terms of payment named in said contract were the same as those of the contract between the plaintiff and Woolley & Co. But if there was any doubt in regard to this matter from an inspection of the terms of the contract, this

doubt was fully resolved in favor of the contention of the plaintiff by the undisputed testimony as to the course of dealing as between such plaintiff and its contractors and sub-contractors hereinbefore referred to.

Such being the legal effect of all the contracts, the court should have instructed the jury that if, in pursuance of his contract with Fostrom, Osier had made a delivery of the ties upon the right-of-way of the plaintiff, as required by said contract, and the same had been inspected and accepted by the plaintiff as a delivery by Woolley & Co., under their contract, the title passed to the plaintiff regardless of the question as to whether or not Osier himself had any knowledge as to when the ties were thus inspected and accepted, or of the question as to whether or not he had or ever did receive his pay therefor.

As we view the instruction of the court, it not only did not thus instruct the jury, as it was requested to do by the plaintiff, but on the contrary instructed them substantially that the title would not pass from Osier unless he was directly a party to the inspection and acceptance of the ties by the plaintiff. This goes to the substance of the whole controversy as to the title to this lot of ties, and as the testimony was practically undisputed, it would perhaps be our duty to direct the entry of judgment in favor of the plaintiff for this lot of ties without a re-trial, were it not for the fact that the question of value does not seem to have been admitted nor exactly established by the undisputed proofs, and of the further and more controlling fact that such a disposition of the case would leave it undetermined as to the other lot of ties. The result would be that, without the consent of the parties, a single case would practically be made into two, as to one of which the entry of a final judgment would be directed, and as to the other an affirmance or a re-trial. In view of these complications,

30—5 WASH.

justice will be best subserved by a re-trial of the whole case in accordance with the law herein laid down.

The judgment will, therefore, be reversed, and a new trial ordered.

ANDERS, C. J., and STILES, DUNBAR and SCOTT, JJ., concur.